IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| BRETT K. HARRIS, Plaintiff, | ) | Civil Case No. 07-6136-KI |
| vs. | ) | OPINION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, Defendant. | ) | |

Kathryn Tassinari
Drew L. Johnson
1700 Valley River Drive
Eugene, Oregon 97401

Attorneys for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Britannia I. Hobbs
Assistant United States Attorney
1000 S. W. Third Avenue, Suite 600
Portland, Oregon 97201-2902

L. Jamala Edwards
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

Attorneys for Defendant

KING, Judge:

Plaintiff Brett Harris brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). I reverse the decision of the Commissioner.

**BACKGROUND**

Harris filed an application for DIB and SSI on September 30, 2004, alleging disability beginning May 1, 2004. The application was denied initially and upon reconsideration. After a timely request for a hearing, plaintiff, represented by counsel, appeared before an Administrative Law Judge ("ALJ") on September 13, 2006. On November 28, 2006, the ALJ issued a decision finding that Harris was not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on April 18, 2007.

**DISABILITY ANALYSIS**

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the

Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

**STANDARD OF REVIEW**

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

**THE ALJ'S DECISION**

The ALJ concluded that Harris suffered from osteoarthritis of the left hip, which he considered to be a severe impairment. However, the ALJ did not find that this impairment met or medically equaled the requirements of any impairments listed in Appendix 1, Subpart P of the Social Security Regulations.

The ALJ opined that Harris had the residual functional capacity to occasionally lift up to 20 pounds, and frequently lift up to 10 pounds; occasionally carry 10 pounds; and stand or walk 10 or 15 minutes at a time, for a total of one to two hours during an eight-hour workday. He found Harris can sit for one to two hours at a time, using a sit/stand option, for a total of six to eight hours a day, with brief stretch breaks of five to 10 seconds. The ALJ concluded Harris has no upper extremity restrictions, and can occasionally use right foot controls but is precluded from using left foot controls. Finally, Harris is precluded from climbing, balancing, kneeling, crouching, or crawling, but can occasionally stoop.

Based on this residual functional capacity, and the testimony of the vocational expert ("VE"), the ALJ concluded that Harris could perform work as a touch-up screener/printed circuit board assembly, surveillance systems monitor, and assembler–small products I.

**FACTS**

Harris, who was 42 years old at the time of the hearing, graduated from high school. He suffers from left hip pain. He quit his job as a masonry worker, which he did for approximately twenty years, due to the pain. He was paid as a home attendant to take care of his mother until the agency making the payments determined his mother was well enough to care for herself. Harris prepares meals, does the laundry, vacuums, and takes his mother to doctor appointments.

He occasionally mows the lawn. He testified that he watches a lot of television, and lies down once or twice a day for an hour or two to relieve the pain.

Harris was first examined for his hip pain on July 7, 2004, by Elena Ralik, M.D. X-rays showed severe degenerative changes of the left hip. Dr. Ralik prescribed Naprosyn and Vicodin, and referred him for an orthopedic consultation.

Kevin Hilton, M.D. examined Harris on October 29, 2004. Dr. Hilton noted severe osteoarthritis with loss of joint space in the left hip, as well as osteophyte and cysts in the left femur head. Dr. Hilton recommended non-steroid anti-inflammatory drugs and exercise, but precluded heavy labor. He recommended full time work without heavy lifting, stooping or bending. He noted that Harris would need total hip arthroplasty in the future, but should delay the surgery until his late forties or early fifties.

About a year later, after having moved from California to Oregon, Harris saw Lyle Torguson, M.D. for his hip pain. He reported using only Tylenol for the pain, and was having difficulty sleeping. Dr. Torguson looked at the x-rays and noted that they displayed the hip to be "almost bone on bone." Tr. 196. Dr. Torguson referred Harris to an orthopedic surgeon.

Harris was examined by Dennis Collis, M.D., an orthopedic surgeon. Dr. Collis opined that Harris suffered from "unequivocally bad hip arthritis," and would need a hip replacement. Tr. 202. He described Harris as having a significant limp on the left side, with about 1 cm of shortening on the left hip. Even after any surgery, Dr. Collis opined that plaintiff would not be able to perform heavy hard labor. He thought that, after surgery, Harris would need vocational rehabilitation, and could do limited walking and standing and light lifting of no more than 50

pounds. Dr. Collis noted that such work "would of course be after his hip is replaced. At this point, he is just too painful to do any meaningful, gainful employment." Id.

## DISCUSSION

I. Subjective Symptom Testimony of Harris

Harris argues that the ALJ failed to give clear and convincing reasons for rejecting his testimony. The ALJ concluded that Harris did not need to lie down during the day, suggesting that it was "at his convenience" as opposed to something that was "necessary or required." Tr. 17. Harris argues Dr. Collins' remark that Harris was in too much pain to work, and that the x-ray characterized his hip as "bone-on-bone," support Harris' statement that he needs to lie down during the day. Tr. 202. Harris argues his need to lie down should have been included in his residual functional capacity.

The Commissioner responds that the ALJ properly found Harris had no difficulty paying attention or following instructions, demonstrating that he was not affected by the medication he took. In addition, the ALJ thought the fact that Harris watches television demonstrates that he can sit for long periods of time, and his ability to perform chores for his mother illustrates that his complaints of pain are not fully credible.

Harris replies that the ability to watch television cannot be an indicator of ability to work, and argues that Harris can lie down, stand or sit to watch television. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (watching television is "so undemanding that [it] cannot be said to bear a meaningful relationship to the activities of the workplace").

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce

objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Id. at 1282. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

In Orn, the court concluded that the claimant's ability to watch television had no bearing on the claimant's ability to perform work as a surveillance system monitor because watching television is so undemanding. Here, however, the ALJ relied on Harris' watching television to support the ALJ's conclusion that Harris can sit for long period of time. Harris testified that he "sit[s] with [his mother] and watch[es] TV." Tr. 224. Harris' mother confirmed that Harris lies down only in his bedroom. As a result, the ALJ did not err in relying on this activity to craft Harris' RFC. In addition, the chores Harris performs for his mother are consistent with the limitations found by the ALJ.

However, Harris' ability to perform the household work is only possible because he is able to lie down once or twice a day for an hour or two. The ALJ rejected this testimony, finding

that the evidence suggests Harris does so only at his convenience, and not out of necessity. Harris' testimony, however, makes it quite clear that he lies down in order to relieve his pain, and not just because it is convenient.

> Q: Mr. Harris, I know you take a couple of pain medications for, for pain in your hip. Is there anything else you do that helps with the pain?
>
> A: I just lay down once or twice a day for an hour or two. That's what I do.
> . . .
> Q: You have a, do you have a set schedule you do or --
> . . .
> A: Whenever it hurts too bad, I'll go lay down.

Tr. 230. No other portion of the record supports the ALJ's statement that Harris lies down out of convenience. In fact, Harris reported to Dr. Collis that he experiences pain while sitting, standing, walking and sleeping. As a result, the ALJ did not give a clear and convincing reason for discrediting Harris' need to lie down.

II. <u>Lay Witness Testimony</u>

Harris argues that the ALJ neglected to consider the testimony of his mother, Lucille Harris. Ms. Harris testified that her son gets up and fixes her breakfast in the morning, but then goes back to bed and spends most of the day resting. She noted that he appears to be in pain. The ALJ summarized the testimony, but did not explain why he rejected it, and Harris argues this is not harmless error. According to Harris, his mother's testimony confirms that he spends most of the day resting.

The Commissioner contends that the ALJ's failure to give specific reasons for rejecting Ms. Harris' testimony is harmless. Ms. Harris' testimony was no different from Harris' and since, according to the Commissioner, the ALJ properly rejected Harris' testimony, he also properly rejected Ms. Harris' testimony.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). "Where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006).

I cannot consider the ALJ's failure to discredit Ms. Harris' testimony as harmless error. Fully crediting Ms. Harris' testimony, the ALJ would have to conclude that Harris must lie down for some portion of the day which, as described below, would require a finding of disability.

III. Medical Opinion

Harris argues that the ALJ did not give clear and convincing reasons for accepting the opinion of Dr. Hilton in lieu of Dr. Collis' opinion. Dr. Hilton opined that Harris could work full time if he engaged in no heavy lifting, stooping or bending. Only a year later, Dr. Collis determined that, until Harris had surgery on his left hip, he was in too much pain to work. He came to this conclusion despite noting that the updated x-rays he had ordered showed very little change from the x-rays Dr. Hilton obtained.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's

opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record. Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

As an initial matter, both Dr. Hilton and Dr. Collis are treating physicians who gave conflicting opinions about the ramifications and treatment of Harris' impairment. As a result, the ALJ need not give clear and convincing reasons for rejecting Dr. Collis' opinion, as Harris urges, but rather need only give specific and legitimate reasons supported by substantial evidence in the record.

The ALJ rejected Dr. Collis' opinion that Harris suffered from too much pain to work. The ALJ noted that the level of medication Harris took–generally two Vicodin a day, sometimes three times a day, and Naprosyn two times a day–did not indicate disabling pain. The x-rays between July 2004 and October 2005 did not show significant changes. The ALJ believed that Dr. Hilton's assessment was consistent with the kinds of chores Harris had been doing in caring for his mother. Nevertheless, the ALJ concluded that Harris could not perform light work as Dr. Hilton suggested, but could perform only modified sedentary work.

Harris challenges the ALJ's conclusion that Vicodin two to three times a day and Naprosyn twice a day is not indicative of disabling pain, when that conclusion is not supported by any evidence in the record. In addition, Harris interrupts the chores he performs for his mother by lying down once or twice a day for an hour or two to relieve pain.

The Commissioner argues that the ALJ's evaluation of the medical evidence was rational and supported by substantial evidence.

The ALJ failed to give specific and legitimate reasons for rejecting Dr. Collis' opinion. First, the ALJ's conclusion that Dr. Hilton's opinion is more consistent with Harris' activities is not supported by the record. As I explained above, although Harris is able to perform household chores, he needs to lie down once or twice a day for an hour or two to manage his pain. Second, even if I accept that the level of medication Harris is taking is not indicative of disabling pain, the evidence reflects Harris' need to lie down to further manage his pain. Finally, the ALJ does not explain why he accepted Dr. Hilton's opinion that Harris was able to work, but did not accept the less restrictive limitations of light work that Dr. Hilton recommended.

In sum, the ALJ failed to give specific and legitimate reasons for rejecting Dr. Collis' opinion that Harris' pain precludes him from working.

IV. Relief

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant

disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. Id. On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

The ALJ neglected to provide a clear and convincing reason for rejecting Harris' assertion that he needs to lie down to manage his pain, and neglected to give any reasons for rejecting Ms. Harris' observations. In addition, the ALJ failed to give specific and legitimate reasons supported by substantial evidence for rejecting Dr. Collis' opinion that Harris suffers from too much pain to work. There is no need to give the ALJ another opportunity to reconsider this evidence.

If the RFC included Harris' need to lie down once or twice a day, the VE testified such a limitation would preclude all work in the national economy. Tr. 244. Accordingly, since it is clear from the record that Harris is unable to perform work in the national economy, I remand for a finding of disability.

**CONCLUSION**

The decision of the Commissioner is reversed. The case is remanded for a finding of disability.

IT IS SO ORDERED.

Dated this 9th day of June, 2008.

/s/ Garr M. King
Garr M. King
United States District Judge